UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WILLIAM SIRMANS

        Plaintiff,

vs.                                Case No.  3:07-cv-656-J-MCR

MICHAEL J. ASTRUE, Commissioner of the
Social Security Administration,

        Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying his application for Social Security benefits.  The Court has reviewed the record, the briefs, and the applicable law.  For the reasons set forth herein, the Commissioner's decision is **AFFIRMED**.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on November 30, 2004 (Tr. 22, 24).  The Social Security Administration ("SSA") denied the application initially and upon reconsideration.  (Tr. 22-25).  Plaintiff then requested (Tr. 30) and received a hearing before an Administrative Law Judge (the "ALJ") on January 16, 2007 (Tr. 246-303).  On March 21, 2007, the ALJ issued a decision finding Plaintiff not disabled.  (Tr. 7-16).  Plaintiff filed a Request for Review by the Appeals Council (Tr. 3D), but the Appeals Council denied the request on June 23, 2007 (Tr. 3A-3C).  Accordingly, the ALJ's March 21, 2007

_____

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Doc. 17).

1

decision is the final decision of the Commissioner.  Plaintiff timely filed her Complaint in the

United States District Court on July 17, 2007.  (Doc. 1).

## II.    NATURE OF DISABILITY CLAIM

### A.    Basis of Claimed Disability

Plaintiff claims to be disabled since February 1, 2004[2] (Tr. 52) due to an injury and

ongoing pain in his right knee.  (Tr. 22, 24, 52).

### B.    Summary of Evidence Before the ALJ

On the date the ALJ's decision was issued, Plaintiff was 42 years old with a seventh

grade education.  (Tr. 249-50).  Plaintiff has past relevant work experience as a service

manager for a tire company, a tractor operator, and as an engine builder.  (Tr. 55-62, 252-

56).

### 1.    Plaintiff's Impairments[3]

On November 4, 2003, Plaintiff was examined at Baptist Occupational Health after

injuring his knee while working as a service manager for Big Chief Tire Company several

days earlier.  (Tr. 113).  He was diagnosed with right knee strain of an internal ligament.

(Tr. 113).   His attending physician ordered him to undergo a MRI and two weeks of physical

therapy.  (Tr. 113).  Although Plaintiff had swelling and recurrent pain, he continued working

as a service manager through February 2004.  (Tr. 160).

On February 17, 2004, Paul D. Shirley, M.D., an orthopedic surgeon, evaluated

---

[2] Initially, Plaintiff set forth November 2003 as his date of disability; however, at the hearing he agreed to adjust his disability onset date to February 1, 2004 due to the fact that he continued to work as late as January 2004.  (Tr. 250-52 ).

[3] This summary of Plaintiff's impairments will be limited to the issues Plaintiff raises on appeal.

Plaintiff because Plaintiff continued to experience pain in his right knee.  (Tr. 160).  Dr. Shirley noted a MRI of Plaintiff's knee showed an oblique tear of the posterior horn of the medial meniscus.  (Tr. 160).  Dr. Shirley determined Plaintiff was unable to work as a result of his pain (Tr. 160) and on March 17, 2004, Dr. Shirley performed an athroscopic debridement, chondroplasty of Plaintiff's medial femoral condyle, and partial medial menisectomy (Tr. 157).

Plaintiff returned to see Dr. Shirley one week later, again complaining of discomfort. (Tr. 158).  He had sharp medial pains and effusion in his knee.  (Tr. 158).  Because Plaintiff continued to complain of pain, he underwent a MRI of his right knee on April 20, 2004, which showed bone marrow edema of the medial tibial plateau at the medial joint margin without any concentric pattern of signal intensity to specifically suggest osteonecrosis, joint effusion, pre-patellar subcutaneous edema, or surgical change of the medial meniscus.  (Tr. 155).

Plaintiff's pain and swelling persisted and in early July 2004, Dr. Shirley determined Plaintiff had a re-tear of his meniscus.  (Tr. 154).  Plaintiff underwent a second partial medial menisectomy, as well as an arthroscopic joint debridement and partial synovectomy on July 7, 2004.  (Tr. 153).  Plaintiff remained in pain and unable to work through September 2004. (Tr. 150-51).  His pain had decreased somewhat by October 2004, and Dr. Shirley instructed Plaintiff needed to work in a place that does not involve a lot of prolonged standing, squatting, or kneeling.  (Tr. 150).  Dr. Shirley recommended Plaintiff get vocational retraining so that Plaintiff could perform sedentary work.  (Tr. 150).  Dr. Shirley opined Plaintiff was capable of doing things that involved getting up and walking short distances and back, as long as he was later able to get weight off his leg.  (Tr. 150).

3

On October 18, 2004, Dr. Shirley noted Plaintiff had anatomic loss of meniscus and hyaline cartilage from his work-related injury, as well as recurrent synovitis, arthritic pain, recurrent swelling requiring aspiration and injection, persistent weakness, and atrophy.  (Tr. 148).  He determined Plaintiff had an 8% whole man impairment secondary to the lower extremity problem.  (Tr. 148).  He recommended Plaintiff for the retraining program, and noted Plaintiff will continue to need ongoing care and possibly surgery.  (Tr. 148).

On November 29, 2004, Dr. Shirley noted Plaintiff's effusion was down and his medication and brace were helping.  (Tr. 146).  Dr. Shirley assessed Plaintiff's limitations, finding him capable of: walking two to four hours in an eight-hour day; standing one to two hours in an eight-hour day; sitting unlimited with the ability to stand; operating foot pedals and using his left foot for the clutch; climbing in and out of a truck once or twice per hour; lifting/carrying no more than 25 pounds; and unlimited upper extremity use.  (Tr. 146).  Dr. Shirley, however, precluded Plaintiff from squatting, kneeling, crawling, and climbing at unprotected heights.  (Tr. 146).  Dr. Shirley stated Plaintiff "is perfectly capable of doing sedentary or moderate activities[,]" but "[h]e will require retraining because he has always worked in heavy areas and has a limited formal education."  (Tr. 146).

In January and February 2005, Dr. Shirley noted Plaintiff continued to have pain and limited function of his knee.  (Tr. 144).  In February 2005, Dr. Shirley recommended Plaintiff see a pain management physician due to his chronic pain.  (Tr. 143).  As of April 12, 2005, Dr. Shirley was encouraged by Plaintiff's progress; there was less effusion in Plaintiff's knee and Plaintiff's range of motion and muscle tone had improved.  (Tr. 144).  Nevertheless, Dr. Shirley noted Plaintiff continued to have significant pain and his physicians were considering use of a spinal cord stimulator to help alleviate such pain.  (Tr. 139-144).  Dr. Shirley, in his

most recent note contained in the record (dated May 25, 2006), stated that Plaintiff's pain patterns interfere with his function, but he was capable of performing sedentary activities. (Tr. 139).

Upon Dr. Shirley's recommendation, Plaintiff began pain management with Ismail D. Salahi, D.O. on March 25, 2005.  (Tr. 208).  Plaintiff reported to Dr. Salahi that his pain was at a level nine out of ten.  (Tr. 206).  He had a restricted range of motion in his knee flexion and some mild tenderness over the patella and inferior border of the patella.  (Tr. 206). There was no Lachman's sign present and his McMurray test was also negative.  (Tr. 206). Dr. Salahi agreed with Dr. Shirley's opinion that Plaintiff had reached maximum medical improvement and had an 8% permanent impairment rating.  (Tr. 208).

On April 12, 2005, Plaintiff returned to see Dr. Salahi, still complaining of severe right knee pain.  (Tr. 202).  Plaintiff agreed to pursue a spinal cord stimulator trial to help alleviate his pain, although before trying such device Dr. Salahi required approval from a psychologist.  (Tr. 202).  Dr. Salahi also completed a work status form on Plaintiff, designating him as having a temporary total disability.  (Tr. 203).

On August 10, 2005, Dr. Salahi noted Plaintiff's psychologist, Dr. Wittmer, found Plaintiff to be an appropriate candidate for the spinal cord stimulator; however, Dr. Salahi wanted a qualified psychiatrist's approval before performing the implant.  (Tr. 201).   Thus, Dr. Salahi increased Plaintiff's medications and followed Plaintiff on a monthly basis.  (Tr. 195).  On January 12, 2006, Dr. Salahi stated he would be inclined to assign Plaintiff to sedentary work duties, "as he is not totally disabled as a result of his work related injuries in [his] opinion."  (Tr. 195).

Plaintiff continued to complain of pain and Dr. Salahi left his assessment of Plaintiff at

5

maximum medical improvement with a 10%[4] impairment rating.  (Tr. 189-194).  Dr. Salahi also noted that Plaintiff underwent an independent medical examination by Dr. Hoffman who recommended Plaintiff be treated with a TENS unit.  (Tr. 191).  Because Plaintiff had previously tried conservative treatment, including a TENS unit, and because it did not give Plaintiff the relief he wanted, Dr. Salahi disagreed with Dr. Hoffman's recommendation; rather, Dr. Salahi continued to recommend a dorsal column stimulator trial.  (Tr. 189-91).

Plaintiff was examined by Hugh E. Switzer on March 14, 2005 at the request of the SSA.  (Tr. 117).  Plaintiff reported to Dr. Switzer that he had no problems sitting, he could stand in a stationary position for at least 20 minutes and could walk up to 100 feet.  (Tr. 117).  Plaintiff also told Dr. Switzer he continued to drive.  (Tr. 117).  Upon examining Plaintiff's knee, Dr. Switzer noted Plaintiff had effusion of his right knee and tenderness surrounding his patellar excursion and over the medial aspect of his knee; however, Dr. Switzer also determined Plaintiff's knee was stable.  (Tr. 119).  Dr. Switzer noted Plaintiff walked with a limp regardless of whether he used his cane, but found Plaintiff was able to walk longer distances with the cane.  (Tr. 119).  Dr. Switzer diagnosed Plaintiff with synovitis and degenerative changes in the medial aspect of Plaintiff's right knee and patellofemoral area, secondary to degenerative arthritis.  (Tr. 120).  He agreed with Dr. Shirley's findings of Plaintiff's limitations.  (Tr. 120).

---

[4]  On two different occasions Dr. Salahi noted that Plaintiff had already been placed at MMI status with a 10% impairment rating.  (Tr. 192, 207).  This statement is actually incorrect, as Dr. Shirley assessed Plaintiff as being at MMI with an 8% impairment rating (Tr. 208 ).  Dr Salahi stated he agreed with Dr. Shirley's findings (Tr. 207), but evidently confused the 8% impairment rating with a rating of 10%.

6

On March 3, 2006, Mark C. Hofmann, M.D. performed an Independent Medical Evaluation of Plaintiff. (Tr. 127). Plaintiff reported to Dr. Hoffman that he had constant knee pain, averaging about an eight on a ten point scale and ranging from five to ten out of a ten point scale in intensity. (Tr. 128). He further reported he could walk about 300 feet at one time, stand 30 to 45 minutes at one time, and sit 30 minutes at one time. (Tr. 128). He noted use of electrical stimulation and physical therapy helps his pain. (Tr. 128). Upon examination, Dr. Hofmann reported Plaintiff had some tenderness on palpation over the lateral aspect of Plaintiff's right knee, but there was no significant joint effusion or discoloration evident. (Tr. 129). Plaintiff had full extension of the right knee and 130 degree flexion. (Tr. 129). Dr. Hofmann recommended Plaintiff undergo a 30-day trial of a TENS unit to relieve some of his pain, as opposed to a dorsal column stimulator implantation. (Tr. 130). He also noted that Plaintiff's chronic knee problem appears permanent, but he assessed Plaintiff as a fair candidate for decrease in pain with electrical stimulation. (Tr. 130).

On July 28, 2006, Dr. Salahi completed a medical assessment of Plaintiff's ability to do work related physical activities and found Plaintiff capable of lifting up to ten pounds occasionally, sitting eight hours in an eight-hour work day; standing 1 hour in an eight-hour work day; and walking one hour in an eight-hour work day. (Tr. 210-212). Next, Dr. Salahi noted Plaintiff could never climb, balance, stoop, crouch, kneel, or crawl because of his right knee pain, but he could use both of his hands continuously. (Tr. 212). Dr. Salahi noted Plaintiff has constant pain, which is exacerbated by walking, and lifting, and which frequently interferes with his attention and concentration. (Tr. 213). Dr. Salahi opined Plaintiff needs a job which permits him to shift at will from sitting to standing or walking and that he needs

7

occasional breaks in an eight hour working day.  (Tr. 213).  Dr. Salahi opined Plaintiff could

be expected to miss between four and seven days of work per month and that his

impairment has lasted or would be expected to last at least 12 months.  (Tr. 213).  He also

stated Plaintiff suffered from depression (Tr. 213).

On August 1, 2006, Dr. Hoffman completed a medical assessment to do work related

physical activities on Plaintiff.  (Tr. 219).  He found Plaintiff capable of frequently carrying

and lifting up to ten pounds, and occasionally carrying and lifting up to 50 pounds, as a

result of his right meniscal tear.  (Tr. 219 -220).   He also found Plaintiff able to sit for eight

hours intermittently, and that he could stand and walk, both for up to two hours in an eight

hour day.  (Tr. 220).  Dr. Hoffman opined Plaintiff could never climb, balance, crouch, kneel,

or crawl, but he could occasionally stoop.  (Tr. 221).  He also opined Plaintiff's constant

throbbing pain in his right knee was averaging about an eight on a ten point scale and his

pain increased with walking or standing.  (Tr. 222).

Two state agency consultants completed Physical Residual Functional Capacity

("RFC") Assessments on Plaintiff.  The first one was completed on March 17, 2004[5] by R.

Cordova, III.  (Tr. 105-112).  Dr. Cordova determined Plaintiff's primary diagnosis was

synovitis and degenerative joint disease of his right knee. (Tr. 105).  He opined Plaintiff

could occasionally lift 20 pounds, frequently lift 25 pounds, stand and/or walk for a total of at

least two hours in an eight-hour work day; sit a total of six hours in an eight-hour work day,

and push and/or pull unlimitedly.  (Tr. 106).  Dr. Cordova further opined Plaintiff could

occasionally climb ramps or stairs, balance, and stoop, but could never climb ladders,

_____

[5] Although the year is cut off on the last page of this assessment, the undersigned was
able to read the comments on this RFC and determine it was completed in 2004.

ropes, or scaffolds; nor could he kneel, crouch, or crawl.  (Tr. 107).  Dr. Cordova determined

Plaintiff should avoid concentrated exposure to extreme cold and heat, wetness, humidity,

vibration, and hazards.  (Tr. 109).

On June 6, 2005, Dr. Attlesry, a state agency consultant also completed a physical

RFC assessment on Plaintiff.   (Tr. 131-138).  Dr. Attlesry diagnosed Plaintiff with a right

knee injury and right knee pain.  (Tr. 131).  He opined Plaintiff could occasionally lift twenty

pounds, frequently lift ten pounds, stand at least two hours in an eight-hour work day, sit

about six hours in an eight-hour work day, and was limited in pushing and/or pulling with his

lower extremities.  (Tr. 132).  He further opined Plaintiff could only occasionally climb ramps

and stairs, balance, and crouch.  (Tr. 133).  He also opined Plaintiff could never climb

ladders, ropes, or scaffolds; nor could he stoop, kneel, or crawl because Plaintiff was to

avoid putting any pressure on his right knee.  (Tr. 133).  Dr. Attlesry noted Plaintiff should

avoid concentrated exposure to all hazards.  (Tr. 135).

### 2.   Plaintiff's Mental Impairments

Plaintiff began seeing Virgil Wittmer, Ph.D., a licensed psychologist beginning on

June 15, 2005.  (Tr. 124).  The records demonstrate that on November 9, 2005, Plaintiff's

eleventh visit with Dr. Wittmer, Dr. Wittmer reported Plaintiff was having significant

improvement with psychotropic medications and no hallucinatory experiences.  (Tr. 124).

Plaintiff reported he was sleeping well and his mood was favorable, with only mild

depression.  (Tr. 124).  Dr. Wittmer noted Plaintiff was having more good days than bad

days, and was not having suicidal thoughts.  (Tr. 124).  Dr. Wittmer further noted Plaintiff

was exercising every day and overall had improved with acceptance of his physical

limitations and chronic pain.  (Tr. 124).  Dr. Wittmer administered various tests to Plaintiff,

reporting that Plaintiff's pain, on average, was a level five on a ten point scale and had not changed much over the course of his therapy.  (Tr. 124).  As of November 9, 2005, Plaintiff's depression had decreased by 66%, although Plaintiff still felt moderate anxiety, frustration, and anger.  (Tr. 124).

Plaintiff reported to Dr. Wittmer that pain was interfering less with his life and he was able to endure the pain more effectively; Dr. Wittmer found Plaintiff to be much less phobic and irrational in his response to pain.  (Tr. 124).  Plaintiff's perception of his progress showed the following:

> his pain had decreased by 60%; his depression had decreased by 80%; his anger had decreased by 80%; his anxiety had decreased by 70%; he had 50% improvement with erectile dysfunction; he learned pain coping strategies and relaxation for pain management; he improved his activity by 50%; he decreased his hallucinations by 95%; and he decreased his opiate medications.

(Tr. 124-25).  Due to Plaintiff's progress,  Dr. Wittmer discussed discharging Plaintiff from his services as of November 2005; however, Plaintiff elected to continue therapy every three weeks.  (Tr. 125).  Finally, Dr. Wittmer reported that neither he nor Dr. Solloway had any problem with Plaintiff proceeding with a spinal cord stimulator for his pain; however, Dr. Wittmer believed Plaintiff was only a fair, as opposed to good, candidate for long-term satisfaction/positive outcome from the spinal cord stimulator.  (Tr. 125).

During Plaintiff's treatment with Dr. Wittmer, Plaintiff was also seen by Michael L. Solloway, M.D., a psychiatrist, on Dr. Wittmer's recommendation.  (Tr. 136).  On September 16, 2005, Dr. Solloway noted Plaintiff was experiencing depression as a result of his work injury to his knee and the resulting pain.  (Tr. 136).  Plaintiff was also having hallucinations as a result of some medications he was taking.  (Tr. 136).  Dr. Solloway diagnosed Plaintiff with the following three diagnoses: 1) major depressive disorder, single episode, moderate;

2) chronic pain disorder with psychological features, due to a medical condition; and 3) psychosocial stressors of financial difficulties and chronic pain.  (Tr. 187-88).  Dr. Solloway agreed with Dr. Wittmer that Plaintiff was not a good candidate for a spinal cord stimulator at that time.  (Tr. 188).

Dr. Solloway's progress notes show that Plaintiff's disposition improved greatly over the course of two months.  (Tr. 184-85).  However, Plaintiff experienced some psychological set backs (Tr. 181-82), and on May 25, 2006, Dr. Solloway noted Plaintiff's condition had deteriorated and he was not sleeping well.  (Tr. 179).  Although Plaintiff was no longer experiencing hallucinations, he was anxious and moody.  (Tr. 179).  As of May, 2006, Dr Solloway kept his diagnosis as major depressive disorder, single, severe, but without psychotic features.  (Tr. 179).  Dr. Solloway continued seeing Plaintiff through at least the end of November 2006.  His notes demonstrate Plaintiff was still depressed, agitated, in a lot of pain, having trouble sleeping and was hearing voices again.  (Tr. 238-41).  Dr. Solloway also reported Plaintiff was having problems with his medication.  (Tr. 238-39).

On July 18, 2006, Dr. Solloway completed a medical assessment of ability to do work related psychological activities.  (Tr. 215).  He made note that Plaintiff suffered from pain and depression.  (Tr. 216).  He found Plaintiff had marked limitations in maintaining attention and concentration (Tr. 216) and moderate limitations in behaving in an emotionally stable manner (Tr. 217).  He opined Plaintiff would be expected to miss more than 7 days per month from work, Plaintiff's impairments lasted or can be expected to last at least 12 months, and Plaintiff's symptoms and limitations began on September 16, 2005.  (Tr. 217-18).  The assessment, however, appeared to be incomplete.

On January 17, 2007, Dr. Solloway completed a second medical assessment of

11

ability to do work related psychological activities.  (Tr. 242-45).  He opined Plaintiff had the following limitations: he was not significantly limited to follow work rules; he was moderately limited to relate to co-workers, use judgment, interact with supervisors, and function independently; and he was markedly limited in dealing with the public, dealing with work stressors, and maintaining attention and concentration.  (Tr. 242-43).  Dr. Solloway noted Plaintiff had depression with auditory hallucinations, chronic pain, nausea, and loss of appetite from pain medications and depression.  (Tr. 243).  He opined Plaintiff was markedly limited in understanding, remembering and carrying out complex job instructions, and in understanding, remembering, and carrying out detailed but not complex job instructions, and was moderately limited in understanding, remembering, and carrying out simple job instructions.  (Tr. 243).

Dr. Solloway noted Plaintiff has decreased concentration and is angry most of the time.  (Tr. 244).  His depression and pain cause insomnia and his pain medications interfere with his memory and concentration.  (Tr. 244).  Dr. Solloway opined Plaintiff had moderate limitations in adjusting personally and socially, in maintaining his personal appearance, in behaving in an emotionally stable manner, in relating predictably in social situations, and in demonstrating reliability.  (Tr. 244).  Dr. Solloway noted Plaintiff's grooming is marginal, he cannot sit for long periods due to his pain, and he is irritable all of the time.  (Tr. 244).  Dr. Solloway opined Plaintiff would miss more than seven days of work per month and that Plaintiff's impairment either lasted or could be expected to last at least 12 months.

### 3.   Summary of Plaintiff's Testimony

During Plaintiff's hearing with the ALJ on January 16, 2007, Plaintiff testified that he was last employed with Big Chief Tire Company as a service manager.  (Tr. 252).  Since

then, he has looked for work at automotive parts houses, but was denied employment because of his knee. (Tr. 259). Plaintiff testified he hurt his right knee when he was doing an alignment on a car. (Tr. 262). He went to see a physician several days later, but went back to work because the physician told him he had a pulled muscle. (Tr. 263-64). A month later, he continued to have pain in his knee and he was evaluated by Dr. Shirley, who performed knee surgery twice on Plaintiff. (Tr. 264-67). Plaintiff testified he continues to see Dr. Shirley every three months and that he continues to wear a brace recommended by Dr. Shirley and a cane to assist him in walking. (Tr. 267 -70). Plaintiff stated he can walk his dogs continuously for about an hour and then has to sit for relief. (Tr. 270). He also stated he has no problem walking ten to fifteen minutes as long as he can sit down afterwards. (Tr. 270). He opined he could perform a job that would allow him to alternate standing for ten to fifteen minutes and sitting down for a maximum of thirty minutes at a time. (Tr. 271).

Plaintiff also stated Dr. Salahi continues to manage his pain medications on a regular basis. (Tr. 273). He testified he also continues to see Dr. Wittmer for his hallucinations and suicidal thoughts. (Tr. 274). Plaintiff reported his medications have helped with pain relief. (Tr. 275, 278). He testified his pain, when he takes his medication properly, is approximately a six or seven on a ten point scale. (Tr. 281). Plaintiff opined he could lift about twenty to thirty pounds without discomfort. (Tr. 283). He also stated he can bend at the waste and touch his toes and can climb a few steps, but cannot squat or kneel. (Tr. 283-84). He testified he can drive, gets along well with people, and helps with cooking, cleaning, and laundry. (Tr. 284).

13

C.      **Summary of the ALJ's Decision**

A plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months.  42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. § 404.1505.  The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, he is not disabled.  29 C.F.R. § 404.1520(b), 416.920(a)(2)(I).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c),  416.920(a)(2)(ii).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.  20 C.F.R. § 404.1520(d), 416.920(a)(2)(iii).  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.  20 C.F.R. § 404.1520(e), 416.920(a)(2)(iv).  Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.  20 C.F.R. § 404.1520(f), 416.920(a)(2)(v).  Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

In the instant case, the ALJ determined Plaintiff met the non-disability requirements for a period of disability and DIB as set forth in Section 216(i) and 223(d) of the Social Security Act through September 30, 2008.  (Tr. 8, 9).  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since February 1, 2004, the alleged onset

14

date of disability.   (Tr. 9).   At step two, the ALJ held Plaintiff 's history of degenerative joint disease in the right knee, secondary to a torn medial meniscus with surgical repair times two, and a history of depressive disorder (moderate) are severe impairments under 20 CFR 404.1520(c).  (Tr. 9).   At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526).  (Tr. 10).

The ALJ determined Plaintiff has the RFC "to perform a reduced range of light and sedentary work."  (Tr. 10).  He further determined Plaintiff "cannot engage in prolonged standing or walking, given his need for a knee brace and use of a hand held cane."  (Tr. 10). The ALJ noted Plaintiff has non-exertional impairments of mild to moderate pain and depression (without current treatment).  (Tr. 10).   More specifically, the ALJ found Plaintiff:

> can walk for a total of 2 to 4 hours in [an] 8 hour day; he can sit without limitation though he would most likely need the ability to alternate positions between sit/stand/walk every 15 to 30 minutes; he can operate foot or pedal controls and use his left foot for operating a clutch; he can climb in an [sic] out of a truck 1 or 2 times per hour; he cannot lift/carry more than 20 pounds occasionally and 10 pounds or less more frequently; he can grip, handle, hold, finger, turn and manipulate items within the weight limits noted; he cannot squat, kneel, crawl, climb, or be at unprotected heights (due to possibility of knee giving out).  These work restrictions translate into a limited range of sedentary and light work.  He also requires the use of a straight walking cane in the right hand so he only has the use of one hand to lift/carry when walking. Mentally, pain and the residuals of a prior depressive condition produce "moderate" limitations (with "moderate" being defined as a limitation of function exists, but that the individual can still perform the job task satisfactorily) in the following areas: understanding simple instructions, carrying out simple tasks, understanding and remembering detailed but not complex instructions, carrying out such detailed but not complex instructions; interacting with others including members of the general public, co-workers and supervisors; behaving in an emotionally stable manner/being predictable and showing up for work/responding appropriately to changes in work setting.

15

(Tr. 10).

At step four, based on the testimony of the vocational expert ("VE"), the ALJ found Plaintiff is unable to perform any of his past relevant work.  (Tr. 14).  At step five, also based on the testimony of the VE, the ALJ concluded there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (Tr. 14) (citing 20 C.F.R. 404.1560(c) and 4.4.1566).   Specifically, the ALJ noted the VE had determined Plaintiff could perform the positions of surveillance system monitor (sedentary unskilled work), order clerk, food/beverage (sedentary unskilled work), parking lot attendant (light unskilled work), or courier (light unskilled work).  (Tr. 15).  Accordingly, the ALJ determined Plaintiff "has not been under a disability, as defined in the Social Security Act, from February 1, 2004 through the date of this decision (20 CFR 404.1520(g))."  (Tr. 15).

## III.   ANALYSIS

### A.   The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards,  McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence,  Richardson v. Perales, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district

court will affirm, even if the reviewer would have reached a contrary result as a finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (explaining a court must scrutinize the entire record to determine the reasonableness of the factual findings).

**B.      Issues on Appeal**

Plaintiff argues two issues on appeal.  (Doc. 25).  First, he asserts the ALJ erred when he evaluated Plaintiff's pain and determined Plaintiff was not entirely credible.  (Doc. 14, pp. 7-10).   Second, Plaintiff argues the ALJ erred by failing to properly evaluate Plaintiff's psychological difficulties.  (Doc. 14, pp. 11-12).

**1.      Whether the ALJ Properly Evaluated Plaintiff's Pain and Credibility**

Plaintiff argues the ALJ improperly discounted Plaintiff's pain and its effect on Plaintiff when the ALJ ignored or rejected Dr. Salahi's statement that Plaintiff could not work and Dr. Salahi and Dr. Solloway's statements that Plaintiff would miss a significant number of days of work per month.   (Doc. 14, pp. 9-10).  Plaintiff notes that Dr. Salahi determined Plaintiff was incapable of working and would miss between four to seven days of work a month due to his pain.  (Doc. 14, p. 9).  He further notes Dr. Solloway opined Plaintiff would miss more than seven days of work per month because of his pain or pain related issues.  (Doc. 14, p. 10).   Plaintiff argues the ALJ improperly discounted these physicians' opinions regarding

17

Plaintiff's pain and absenteeism.  (Doc. 14, pp. 9-10).  Plaintiff asserts the level of absenteeism projected by both Drs. Salahi and Solloway would preclude Plaintiff's ability to work and the ALJ erred when he rejected these opinions because there was no contradictory evidence in the record which would conflict with these physicians' opinions.  (Doc. 14, p. 10).

The Commissioner responds the ALJ discounted these opinions by Dr. Salahi and Solloway because Drs. Shirley, Switzer, and Hoffman found Plaintiff capable of performing light duty and/or sedentary work despite his pain.  (Doc. 16, pp. 10-12).  Additionally, the Commissioner argues Drs. Salahi and Solloway's opinions are contradicted by their own medical notes, the other medical evidence of record, and Plaintiff's own testimony.   (Doc. 16, pp. 10-15).

The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, 67 F.3d at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)).

In the present case, the ALJ applied the Foote test when he determined that Plaintiff's "medically determinable impairments could reasonably be expected to produce some of the

alleged symptoms, but that [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 12). When Plaintiff's "statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7P. In this case, the ALJ based his credibility findings on the lack of medical evidence supporting Plaintiff's allegations that he was disabled, the inconsistencies in the record with the specific findings of Drs. Salahi and Solloway, and Plaintiff's own testimony. (Tr.12-14).

Having reviewed Plaintiff's entire record, the Court finds the ALJ properly considered Plaintiff's subjective testimony of pain and his reasoning for discrediting such testimony is supported by substantial evidence. Notably, the records show the ALJ's assessment of Plaintiff's RFC is in line with Dr. Shirley's, Plaintiff's treating orthopedist, findings. (Tr. 146). Dr. Shirley repeatedly determined on several occasions that although Plaintiff had pain, Plaintiff was capable of working. (Tr. 139, 146). Additionally, Drs. Switzer and Hoffman's findings were consistent with Dr. Shirley's. (Tr. 120, 128).

Even Dr. Salahi's, Plaintiff's pain management physician, records support the finding that Plaintiff was capable of working. Early on in his treatment, Dr. Salahi found Plaintiff capable of working. (Tr. 208). While Dr. Salahi later opined that Plaintiff was under temporary total disability (Tr. 203), he later opined, in January 2006, that Plaintiff was capable of performing sedentary activities (Tr. 195). Dr. Salahi completed a medical assessment form on Plaintiff and opined Plaintiff could be expected to miss between 4 and 7 days of work a month (Tr. 232); however, the ALJ did not err in discounting this opinion, as

19

the ALJ gave sufficient reasons for doing so.  Namely, the ALJ cited the inconsistencies in Dr. Salahi's notes and noted that Dr. Salahi found Plaintiff capable of performing sedentary activities as late as January 2006.  (Tr. 13).  The ALJ reasoned that Dr. Salahi agreed with the functional limitations noted by Dr. Shirley, i.e., that Plaintiff was at MMI and either an overall 8 or 10% impairment rating and that Dr. Salahi's later medical assessment of Plaintiff was thus inconsistent with his own records and unsupported by the evidence.  The ALJ did not err in concluding Dr. Salahi's latest assessment was inconsistent with his other records.  Dr. Salahi provided no explanation for his opinion that Plaintiff would miss between 4 to 7 days of work per month and the assessment was indeed inconsistent with his other medical records which showed he believed Plaintiff capable of working.  Additionally, the other medical evidence of record and Plaintiff's own testimony support the ALJ's rejection of Dr. Salahi's most recent medical assessment.

The ALJ also properly rejected Dr. Solloway's opinion that Plaintiff would miss more than seven days of work per month and that Plaintiff had a variety of "moderate" and "marked" limitations.  As discussed in greater detail in the next section, the ALJ pointed to contradictions and inconsistencies with Dr. Solloway's other findings, with Dr. Wittmer's records, and with Plaintiff's own testimony.  Specifically, both Dr. Wittmer and Plaintiff indicated Plaintiff's mental limitations had improved significantly, as had his ability to deal with his pain.  (Tr. 124-25).  In fact, Dr. Wittmer's notes show that Plaintiff had met or exceeded his goals mentally and Plaintiff's testimony indicated he was capable of functioning and completing various tasks, his pain medications helped alleviate some of the pain (Tr. 124-25), and Plaintiff even testified he could work if he had the ability to alternate between sitting and standing on a frequent basis (Tr. 271).  The ALJ thoroughly considered the

medical evidence of record and Plaintiff's own testimony, and the ALJ met his duty to set forth specific and adequate reasons for discrediting Plaintiff's allegations that his pain renders him disabled.

### 2.    Whether the ALJ Properly Assessed Plaintiff's Psychological Limitations

Plaintiff next argues that the ALJ erred by failing to consider recent medical problems Plaintiff was experiencing just prior to his hearing with the ALJ.  (Doc. 14, pp. 11-12).  Specifically, Plaintiff argues the ALJ ignored the fact that Dr. Solloway found Plaintiff easily agitated and not ready to return to work in July 2006 and that in August 2006 Plaintiff was depressed and hearing voices again.  (Doc. 14, pp. 11-12).  Plaintiff also asserts he was taking OxyContin for his pain as late as October 2006.  (Doc. 14, p. 11).  Plaintiff argues the ALJ erred in rejecting this evidence based on Plaintiff's testimony that he grocery shops and based on the ALJ's observation that Plaintiff did not have difficulty answering questions and concentrating in the hearing.  (Doc. 14, p. 12).  Plaintiff asserts the ALJ should have given Dr. Solloway's opinion greater weight or developed the record more fully.

The Commissioner responds the ALJ's decision to discredit Dr. Solloway's findings with regard to Plaintiff's mental limitations was supported by substantial evidence.  (Doc. 14, pp. 16-18).  The Commissioner argues Dr. Solloway's proposed mental limitations were inconsistent with Dr. Wittmer's findings and with Plaintiff's statements to Dr. Wittmer that Plaintiff's mental health had significantly improved.  (Doc. 16, p. 16-18).  Moreover, the Commissioner argues Dr. Solloway's findings that Plaintiff is unable to work and that he was markedly limited in various areas were also inconsistent with some of Dr. Solloway's prior medical findings.  (Doc. 16, p. 16-18).  Additionally, the Commissioner argues the ALJ

properly relied on his observations of Plaintiff's appearance and demeanor during the hearing.  (Doc. 16, p. 17).  Finally, the Commissioner notes that although Plaintiff was taking OxyContin for pain, he had not been on any medication to treat depression since September 2005.  (Doc. 16, p. 17).

The opinion of a treating physician, such as Dr. Solloway, "'must be given substantial or considerable weight unless 'good cause' is shown to the contrary.'"  Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004) (citing, Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).  The Eleventh Circuit has determined "good cause" exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2)  evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  Phillips, 357 F.3d at 1241.  In any event, whenever an ALJ decides to disregard the opinion of a treating physician, he/she must clearly articulate the reasons for so doing.  Phillips, 357 F.3d at 1241.

Here, the ALJ reasoned Dr. Solloway's suggestion that Plaintiff suffers from various marked and moderate limitations and that it was likely he would miss more than seven days of work per month was inconsistent and contradictory with the other evidence of record.  (Tr. 13).  Consequently, the ALJ found Dr. Solloway's opinion was not entitled to substantial weight.  (Tr. 13).  The ALJ stated he was unable to appreciate the distinction in Dr. Solloway's findings that Plaintiff had a "moderate" impairment in dealing with co-workers or supervisors but a "marked" limitation in dealing with the general public. The ALJ pointed to the treatment records as support for the ALJ's finding that Plaintiff suffered "moderate, but not marked limitations secondary to his mental impairments."  (Tr. 13).  Additionally, the ALJ pointed to Plaintiff's own testimony that he grocery shopped and his appearance, demeanor,

22

ability to concentrate and respond to questions as further evidence that he was not markedly limited in dealing with the general public and was able to maintain attention and concentrate without undue difficulty.  (Tr. 13).  The ALJ also cited Plaintiff's statements to Dr. Wittmer regarding the improvement in his mental health, as well as Dr. Wittmer's findings that Plaintiff had significantly improved his mental condition, as a basis for not crediting Dr. Solloway's opinion.  (Tr. 13-14).   Finally, the ALJ noted Dr. Solloway's findings on a prior RFC form, although incomplete, were not consistent with his more recent RFC form.

The ALJ relied on the medical evidence in the record, on Plaintiff's testimony, and on the ALJ's own impression of Plaintiff when he determined Dr. Solloway's opinion should not be afforded controlling weight.   Both Dr. Wittmer and Plaintiff clearly stated Plaintiff's mental limitations had significantly improved.  (Tr. 124-25).  This, in addition to the ALJ's own opportunity to assess Plaintiff's condition at the hearing, as well as the inconsistencies in Dr. Solloway's records, were sufficient reasons for discrediting Dr. Solloway's testimony.  <u>See Macia v. Bowen</u>, 829 F.2d 1009, 1011 (11th Cir. 1987) (finding that the ALJ is not prohibited from considering a plaintiff's appearance and demeanor during the hearing).  The Court also notes that at the hearing Plaintiff testified that he continued to see Dr. Wittmer; however, the record does not contain any recent records from Dr. Wittmer which support Dr. Solloway's findings.  The ALJ's reasons for disregarding Dr. Solloway's findings were clearly articulated and were supported by substantial evidence.

## IV.   CONCLUSION

For the foregoing reasons, the Commissioner's decision is hereby **AFFIRMED**.  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this __22nd__ day of July, 2008.

*Monte C. Richardson*

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record